## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARKEL INTERNATIONAL INSURANCE COMPANY, LTD, | : : : : | Civ. No. 05-3540 (GEB) |
| Plaintiff, | : : | |
| v. | : : | **MEMORANDUM OPINION** |
| CENTEX HOMES, LLC, | : : | |
| Defendant. | : : | |

**BROWN, District Judge**

  This matter comes before the Court on the cross motions for summary judgment filed by Markel International Insurance Company, Ltd. (Markel) and Centex Homes, LLC ("Centex"). The issues before this Court are: (1) whether Markel owes a defense and indemnification to Centex as an "additional insured" under an insurance policy Markel issued to Centex's subcontractor, Alpha Contractors; (2) whether Markel acted in bad faith when it denied Centex's request for a defense and indemnification; and (3) whether the Court should allow Centex to engage in additional discovery under Federal Rule of Civil Procedure 56(f). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Court, having considered the parties' submissions and having decided this matter without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, will grant Markel's motion for summary judgment and deny Centex's motion for summary judgment. The Court will also deny Centex's request for additional discovery.

## I. BACKGROUND

  Markel is a company duly organized and existing under the laws of the United Kingdom, with its principal place of business located in London, England. (Pl's SMF ¶ 1.)[1] Centex is a

---

[1] Citation to the moving party's statement of material facts indicates that the parties do not dispute that particular fact.

limited liability company duly organized and existing under the laws of Delaware, with its principal places of business in Dallas, Texas and Manalapan, New Jersey.  (Id. ¶ 2.)  During the relevant time period, Centex was building a residential housing development in Marlborough Township, New Jersey.  (Id. ¶ 11.)  Centex hired Alpha Contractors to build masonry posts for a fence at the site.  (Id.)  Alpha Contractors hired subcontractor Piotr Bielawsky to work at the site. (Id.)

Markel issued a policy of commercial general liability insurance to Alpha Contractors, with an effective policy period from January 7, 2001 to January 7, 2002.  (Id. ¶ 3.)  The policy provides for a defense and indemnification of Alpha Contractors for all negligence claims against Alpha, subject to certain terms, conditions, and exclusions.  (Id. ¶ 5.)  The policy includes an endorsement adding Centex as an additional insured under the policy.  (Id. ¶ 6.)  The endorsement provides that Centex is included as an "insured" under the policy issued to Alpha Contractors, but "only with respect to liability arising out of [Alpha Contractors'] operations or premises owned by or rented to [Alpha Contractors]."  (Id. ¶ 7.)[2]

On July 27, 2001, Mr. Bielawsky was in a motor vehicle collision after leaving the job site to go home at the end of the work day.  (Id. ¶¶ 9, 35.)  Mr. Bielawsky's motor vehicle collided with a vehicle driven by Kerri Anne Buckley on Dutch Lane Road, adjacent to the construction site.  (Id. ¶¶ 9, 11.)  The passenger in Ms. Buckley's vehicle, Christine Gierlowski, suffered serious bodily injury in the accident.  (Id. ¶ 9.) After the accident, Ms. Gierlowski filed suit against Mr. Bielawsky and Ms. Buckley in the Superior Court of New Jersey.  (Id. ¶ 10.)

The policeman who investigated the accident, Patrolman Wolstromer, wrote in his police

---

[2] Specifically, the policy provides:

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

(Pl's Ex. D.)  The terms "you" and "your" in the endorsement refer to the named insured, Alpha Contractors.  The Schedule lists Centex and related entities.

report that the trees and underbrush along the road's edge of the construction site obstructed Ms. Buckley's view of oncoming traffic.  (Id. ¶ 21.)  Patrolman Wolstromer and Mr. Bielawsky also testified during their depositions that the trees and brush obstructed Mr. Bielawsky's view while driving.  (Id. ¶¶ 22-23.)

Alpha Contractors was not engaged by Centex or anyone else to clear any brush or trees at the job site.  (Id. ¶ 15.)  Alpha Contractors did not own or rent the premises at the job site.  (Id. ¶ 30.)  Mr. Bielawsky was also not engaged by Alpha Contractors, Centex, or anyone else to clear any brush or trees at the job site.  (Id. ¶ 18.)

Based on the evidence that Centex's trees and brush obscured the drivers' views, counsel for Mr. Bielawsky filed a Third Party Complaint against Centex and other entities seeking contribution and indemnification for the accident.  (Pl's Ex. K, ¶¶ 14-18.)  Centex seeks a defense and indemnification from Markel as an additional insured under the policy Markel issued to Alpha Contractors. (Pl's SMF ¶ 8.)  Markel has commenced the present action seeking a declaratory judgment that it does not owe Centex a defense and indemnification under the policy.

## II.  DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P.  56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); accord Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock

3

Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citation omitted); see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v.

4

BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact").

## Defense and Indemnification

A court exercising diversity jurisdiction over an insurance case must apply state substantive law.  See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  The parties in the present case submit that New Jersey law applies.  Under New Jersey law, it is the insured's burden to bring the claim within the basic terms of the policy when there is a dispute over the interpretation of an insurance contract.  See Rosario ex rel. Rosario v. Haywood, 799 A.2d 32, 37 (N.J. Super. Ct. App. Div. 2002).  In County of Hudson v. Selective Ins. Co., 752 A.2d 849 (N.J. Super Ct. App. Div. 2000), the New Jersey Superior Court discussed contract interpretation rules involved with insurance policies:

> [A]lthough insurance policies are contractual in nature, they are not ordinary agreements; they are contracts of adhesion and, as such, are subject to special rules of interpretation.  Consequently, we are directed to take a broad and liberal view so that the policy is construed in favor of the insured.
> . . . [P]urchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations.  And their policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow.
> Moreover, it is fundamental that ambiguities in an insurance policy are to be interpreted in favor of the insured . . . . In construing an ambiguous provision, courts should consider whether more precise language by the insurer, had such language been included in the policy, would have put the matter beyond reasonable question.

Id. at 852 (internal citations omitted).

In the present case, the parties dispute whether Centex is an additional insured entitled to a defense and indemnification by Markel due to the third party complaint filed by Mr. Bielawsky. Centex contends that "but for" Alpha Contractor's operations, Mr. Bielawsky's vehicle accident would not have occurred, thus, it is entitled to a defense and indemnification from Markel. Markel contends that it has no duty to defend and indemnify Centex because Centex's liability

arose out of its own negligence when it failed to maintain its trees and underbrush and  there is no "substantial nexus" between Centex's liability and Alpha Contractor's operations.

The first issue to consider is whether Centex may be entitled to a defense and indemnification under the insurance policy if Centex's liability arises out of its own negligence. The insurance policy issued by Markel provided that Centex is an "insured" under the policy issued to Alpha Contractors, but "only with respect to liability arising out of [Alpha Contractor's] operations or premises owned by or rented to [Alpha Contractors]."  Although we have not found any cases on point in New Jersey, this issue has been addressed by several other jurisdictions. The majority of courts have held that an additional insured may be covered for its independent acts of negligence.  For example, in McIntosh v. Scottsdale Insurance Co., 992 F.2d 251 (10th Cir. 1993), Wichita Festivals Inc. obtained insurance from Scottsdale Insurance Co. before running an annual River Festival in Wichita, Kansas.  The city of Wichita was named as an additional insured in the policy "with respect to liability arising out of operations performed by or on behalf of the named insured."  Id. at 254.  The city of Wichita was sued for the failure to warn of a dangerous condition after a patron of the festival, Scott McIntosh, jumped over a wall and fell twenty feet.  The district court, applying Kansas law, interpreted the phrase "arising out of the operations performed . . . by . . . the named insured" to mean arising from Wichita Festival's negligence, thereby excluding coverage for the city of Wichita's negligence.  On appeal, the Court of Appeals for the Tenth Circuit reversed, stating "the phrase 'but only with respect to liability arising out of [Wichita Festivals'] operations" is ambiguous as to whose negligence is covered and whose negligence is excluded from coverage."  Id. at 254.  The court further noted, "'[i]f the parties had intended coverage to be limited to . . . vicarious liability . . ., language clearly embodying that intention was available.'"  Id. at 255 (citation omitted).  See also  Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 487, 500 (5th Cir. 2000) (noting that the majority of courts have held that an additional insured may be covered under the policy for its sole negligence); Acceptance Ins. Co. v. Syufy Enterprises, 81 Cal. Rptr. 2d 557, 561-62 (Cal.

App. 4th 1999) (finding that similar policy language does not allocate coverage based on named insured's fault); Philadelphia Elec. Co. v. Nationwide Mut. Ins. Co., 721 F. Supp. 740, 742 (E.D. Pa. 1989) (holding that clause adding additional insureds "for any work performed by [the named insured] on their behalf" covered additional insureds for their own negligence related to work of named insured).

The next issue to consider is whether there is the requisite connection between Centex's alleged negligence and the operations performed by Alpha Contractors.  Under New Jersey law, "courts have given a broad and liberal interpretation to common insurance policy language pertaining to coverage for additional insured parties for injuries 'arising out of' work or operations performed by the main policyholder."  Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 444 (3d Cir. 2003).  New Jersey courts have defined the phrase "arising out of" broadly to mean "'conduct originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided."  County of Hudson, 752 A.2d at 852 (citations omitted). "'[W]hether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case . . . .'"  Id. at 853 (citations omitted).

In County of Hudson, the New Jersey Superior Court construed the scope of an additional insured endorsement in a commercial general liability policy that provided coverage for liability "arising out of your work."  Defendant Selective Insurance Company issued the policy to Malpere Enterprises, Inc., a general contractor hired to perform masonry restoration work at a courthouse in Jersey City.  The policy was required under a contract between the County of Hudson and Malpere.  The County was named an additional insured "but only with respect to liability arising out of 'your work' for that insured by or for you."  Id. at 850.  An employee of a subcontractor slipped and fell on a marble staircase while at the courthouse seeking information to prepare a bid.  The employee sued the county and the county sought coverage from Selective.  Selective declined coverage on the ground that the injured employee was not engaged in the contractor's work when he fell.  The lower court found that no substantial nexus existed between

the dangerous condition that caused the subcontractor's employee to fall and the contractor's work, thus, Selective properly declined to defend and indemnify the county under the endorsement.

On appeal, the New Jersey Superior Court considered whether the fall grew out of Malpere's work.  The policy issued by Selective defined the term "work" as "work or operations performed by you or on your behalf."  Id. at 853.  The court  assumed that the inclusion of the term "operations" in the definition of "work" was not surplusage, and that "work"meant the contractor's or its agent's physical work along with the administrative work of a type normally performed by a contractor.  See id.  The court concluded that "work" would involve the contractor's furnishing information to any potential subcontractor considering whether to bid on a job, and reasonably would entail visits by that subcontractor to the worksite in order to obtain the needed information.  See id.  Because the employee was at the courthouse to obtain information for bidding, the court concluded that  the fall was sufficiently connected to Malpere's "work" for coverage to apply.  See id. at 854.

In the present case, the additional insured provision does not define "operations." "Operations" has been defined as "[a]n act, process, or way of operating," "[a] process or series of acts aimed at producing a desired result or effect," or "[a] method or process of productive activity."  Webster's II New Riverside University Dictionary, 824 (1984).  Mr. Bielawsky was hired to construct masonry posts.  At the time of Mr. Bielawsky's accident, he was finished working for the day and was going home.  Unlike the employee in County of Hudson who fell while performing work under the contract, Mr. Bielawsky was not performing any operations related to constructing masonry posts at the time of his accident.  As a result, this Court concludes as a matter of law that the requisite connection between Centex's failure to maintain its trees and bushes and Mr. Bielawsky's operations is not present for Centex to be covered under the additional insured provision.  See Pro Con Constr. Inc. v. Acadia Ins. Co., 794 A.2d 108, 110 (N.H. 2002) (finding no requisite connection between an employee's fall on ice during a coffee

break and his operations because the employee was hired to paint and the injury did not occur while the employee was painting); <u>Time Warner Entertainment Co., L.P. v. Travelers Cas. & Sur. Co.</u>, No. Civ. A. 97-6364, 1998 WL 800319, at *9 (E.D. Pa. Nov. 10, 1998) (finding liability did not "arise out of your work" when employee hired to install cable was injured while obtaining a hard hat at the direction of his employer because the injury occurred when the employee was off company time).[3]  Markel's motion for summary judgment as to coverage will be granted and Centex's motion for summary judgment will be denied.

## Bad Faith Claim

To establish a bad faith claim in the insurance context under New Jersey law, a plaintiff must show two elements: (1) the insurer lacked a "fairly debatable" reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. <u>See</u> <u>Pickett v. Lloyds</u>, 621 A.2d 445, 453 (N.J.1993). To establish a bad faith claim, the entity seeking coverage must be able to establish, as a matter of law, a right to summary judgment on the substantive claim.  If  the entity cannot establish a right to summary judgment, the bad faith claim fails. <u>See id.</u> at 454.

In the present case, Centex has failed as a matter of law to establish a bad faith claim because it has not shown that it is entitled to coverage under the additional insured provision.  As a result, Markel's motion for summary judgment as to the bad faith claim will be granted and Centex's motion will be denied.

## Discovery Request

Centex seeks additional discovery under Federal Rule of Civil Procedure 56(f) to determine why Markel has denied its claim for coverage and whether its coverage position is

---

[3] Centex's reliance on <u>Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.</u>, 671 A.2d 1122 (N.J. Super. Ct. App. Div. 1996) and <u>Liberty Village Assoc. v. West Am. Ins. Co.</u>, 706 A.2d 206 (N.J. Super. Ct. App. Div. 1998) is misplaced.  In both cases, the language of the additional insured provision named landlords as additional insureds but only with respect to incidents arising out of the use of the tenant's premises.  Because the language in the additional insured provisions in <u>Harrah's</u> and <u>Liberty Village</u> differs from the language in the present case, the holdings are inapplicable.

inconsistent with its own internal interpretation of the additional insured endorsement as well as that of the insurance industry.  (Canning Aff. ¶ 11.)  I will deny Centex's request for additional discovery because the undisputed facts regarding the accident and the language of the policy show that Centex is not entitled to a defense and indemnification as a matter of law.

## III.  CONCLUSION

For the foregoing reasons, Markel's motion for summary judgment will be granted and Centex's motion for summary judgment and request for additional discovery will be denied.  An appropriate form of order is filed herewith.


Dated:  February 1, 2006


　　　　　　　　　　　　　　　　　　s/ Garrett E. Brown, Jr.　　　　　
GARRETT E. BROWN, JR., U.S.D.J.